AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAR 28 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One Samsung Galaxy Note 4 Model: SM-N910V<br>IMEI: 9900 0494 7308 650 | )<br>)<br>) Case No.  **18MJ1446**<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, which is incorporated by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 952/960 | Importation of a controlled substance |

The application is based on these facts:
See Affidavit of Homeland Security Investigations Special Agent Francisco Fajardo, which is hereby inorporated by reference and made part hereof.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Francisco Fajardo, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/28/18

_____
*Judge's signature*

City and state: San Diego, CA

Jill L. Burkhardt, Magistrate Judge
*Printed name and title*

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

>One Samsung Galaxy Note 4
>Model: SM-N910V
>IMEI: 9900 0494 7308 650
>SKU: SMN910VZKE
>ICCID: 8952 0205 1561 0317 999
>FCC ID: A3LSMN910V
>
>**(Target Device #1)**

**Target Device #1** is currently held as evidence at the HSI-ASAC Calexico Evidence Vault located at 2051 N. Waterman Ave., Suite 100, El Centro, CA 92243.

## **ATTACHMENT B-1**
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 4, 2018, up to and including February 15, 2018.

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Francisco Fajardo, Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

### INTRODUCTION

1.  I make this affidavit in support of an application for a warrant to search the following electronic devices:

    a)  Samsung Galaxy Note 4 Model SM-N910V **(Target Device #1)**, described in Attachment A-1 (incorporated herein by reference);

    b)  ZTE Phone Model Blade L2 Plus **(Target Device #2)**, described in Attachment A-2 (incorporated herein by reference);

    c)  UMX Phone Model MXG401 **(Target Device #3)**, described in Attachment A-3 (incorporated herein by reference);

(collectively the **Target Devices**), which were seized from Leonel LEON (LEON) on February 15, 2018, incident to his arrest for importation of methamphetamine at the Calexico, California West Port of Entry (POE) and which are currently held as evidence at the HSI – ASAC Calexico Evidence Vault located at 2051 Waterman Ave., Suite 100, El Centro, California 92243.

2.  I seek authority to search the **Target Devices** for evidence from October 14, 2017, through February 15, 2018 of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as described in Attachments B (incorporated herein by reference.)

3.  The information contained in this affidavit is based upon my experience and training, and in consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but

only contains those facts believed to be necessary to establish probable cause. Dates, times and amounts are approximate.

## EXPERIENCE AND TRAINING

4. I am a Special Agent employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been so employed since June 2016. Prior to my employment with HSI, I was employed as a Customs and Border Protection Officer with the United States Customs and Border Protection from September 2013 until June 2016. As a Customs and Border Protection Officer I became proficient in conducting vehicle searches and targeting vehicles for possible illegal smuggling of contraband and narcotics. In my current position with HSI, my duties include investigating the trafficking of federally controlled substances. During my experience in law enforcement, I have had training in investigating the unlawful importation, possession, and distribution of controlled substances. My experience includes many arrests, searches, and interviews. I have also worked and consulted with many law enforcement officers experienced in narcotics smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego International Ports of Entry.

5. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code. I have participated in criminal investigations involving, among other things, the illegal smuggling of narcotics into the United States, and I have received formal training in the laws and regulations relating to such investigations including 21 USC §§ 952 and 960, Importation of a Controlled Substance. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

2

6. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    g. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

7. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

3

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

   a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

4

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9. On February 15, 2018, at approximately 2:30 p.m., LEON applied for admission to enter into the United States from Mexico through the Calexico, California, West Port of Entry (POE). LEON entered through the vetted, designated commuter lane, known as the Secured Electronic Network for Travelers Rapid Inspection (SENTRI). LEON was the driver, registered owner, and sole occupant of a 2012 Chevrolet Silverado. LEON presented a facially valid SENTRI Card as proof of his identity and U.S. immigration status as a citizen of the United States. LEON stated he was entering the United States to go to work in Heber, CA.

10. LEON and his vehicle were targeted by a Customs and Border Protection Officer (CBPO) for participation in an enforcement operation. The enforcement operation consisted of selected vehicles being screened by a Z-Portal X-ray examination. A CBPO noticed anomalies in LEON's spare tire during a Z-Portal X-ray examination. The spare tire on the Chevy also received a positive alert notification from a Narcotics Human Detector Dog. The Chevy was taken to a pneumatic lift where a CBPO discovered recent tool marks on the edge of the rim of the spare tire. A subsequent inspection of the spare tire revealed nine (9) packages which field-tested positive for the properties of methamphetamine, with a combined weight of approximately 14.64 kilograms (32.27 pounds).

11. During his post-arrest interview, LEON positively identified three cell phones belonging to him: a UMX cell phone, a Telcel ZTE phone, and a Samsung Galaxy Note 4 cell phone. The three cell phones were seized by HSI Special Agents. LEON was asked where the phones were when CBP arrested him. LEON stated he had his Telcel ZTE and

his UMX cell phone in the glove compartment of the Chevy. LEON stated he had the Samsung Galaxy Note 4 phone on his person, in his pants pocket.

12. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that the **Target Devices** were used to coordinate the importation of methamphetamine into the United States. In addition, I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices** may identify the persons involved in narcotics trafficking activities, including LEON. Furthermore, it is likely the **Target Devices** may contain incriminating information pertaining to the smuggling event. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of LEON, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, deleted messages/data, pictures and other digital information are stored in the memory of the **Target Devices**.

13. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional experience, this requires planning and coordination in the weeks and often months prior to the event. This planning often includes coordination on crossing the border to develop a crossing history or pattern.

14. A review of LEON's crossing records shows crossings in the 2012 Chevrolet Silverado vehicle that he used to conceal the methamphetamine. Systems checks reveal that LEON has first crossed in the Chevy bearing the license plate "LE0NL" on October 14, 2017. According to his crossing records, LEON had over 100 crossings in the Chevy prior to his arrest on February 15, 2018. As noted previously, the methamphetamine was purposely concealed within the spare tire of the vehicle. Given this, I respectfully request permission to search the Target Devices for items listed in Attachments B beginning on

October 14, 2017, up to and including February 15, 2018.

## **METHODOLOGY**

15. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the subject cellular/mobile telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

7

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

18. Based on all of the facts and circumstances described above, there is probable cause to conclude that the **Target Devices** were used to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

19. Because the **Target Devices** was seized during the investigation of LEON's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by LEON continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from October 14, 2017, through February 15, 2018.

20. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 through A-3, and the seizure of items listed in Attachments B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Francisco Fajardo
Special Agent

Subscribed and sworn to me before this  28  day of March, 2018.

Jill Burkhardt
United States Magistrate Judge